IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| TROY DEAN DESHAZER, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-240-N-EJL-CWD |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## <u>REPORT</u>

Currently pending before the Court for its consideration is Troy Deshazer's

("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security

benefits, filed June 4, 2008.  The Court has reviewed the Petition for Review and the Answer, the

parties' memorandums, and the administrative record (AR).  For the reasons that follow, the

Court recommends affirming the decision of the Commissioner.

### I.
### Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental

Security Income on July 27, 2005, alleging disability due to degenerative arthritis, lower back

**REPORT AND RECOMMENDATION - Page 1**

pain, headaches, depression, and Hepatitis C.  Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) Richard Say held a hearing on September 27, 2007, taking testimony from Petitioner, vocational expert Daniel R. McKinney, and Petitioner's friend, Mr. Jimmy Fuller.  (AR 665-687.)  ALJ Say issued a decision finding Petitioner not disabled on January 28, 2008.  (AR 11-24.)

Petitioner filed a timely appeal to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 3-5.)  Petitioner appealed this final decision to this Court.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 49 years of age.  He has a high school education and his past relevant work includes work as an automobile wrecker, building maintenance worker, driller's helper, automobile mechanic, and skidder operator.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of February 2, 2003.  At step two, it must be determined whether claimant suffers from a severe impairment.  The ALJ found Petitioner's degenerative disc disease of the cervical and lumbar region of the spine, left shoulder injury, depressive disorder, antisocial personality features, and history of drug and alcohol dependance are "severe" within the meaning of the Regulations.  Step three asks whether

a claimant's impairments meet or equal a listed impairment.  The ALJ found that Petitioner's

impairments, either alone or in combination, did not meet or equal the criteria for a listed

impairment.

       If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

the residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work.  The ALJ found Petitioner was not able

to perform his past relevant work.  If a claimant demonstrates an inability to perform past

relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

claimant retains the capacity to make an adjustment to other work that exists in significant levels

in the national economy, after considering the claimant's residual functional capacity, age,

education and work experience.  The ALJ determined that Petitioner did not have the ability to

perform the full range of light work considering his limitations, but that Petitioner's RFC

supported a finding that he could perform other unskilled light work existing in significant

numbers in the national economy, such as small parts assembler, electrical worker, weld

inspector, or small parts production inspector.  (AR 23.)

## III.
## Standard of Review

       The Petitioner bears the burden of showing that disability benefits are proper because of

the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C.

§ 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be

determined to be disabled only if his physical or mental impairments are of such severity that he

not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an

ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at steps two, four, and five of the sequential evaluation process. He specifically contends that at step two, the ALJ improperly rejected Petitioner's medical evidence concerning the severity of his Hepatitis C and headaches, which the ALJ found not severe. Next, Petitioner contends that at step four, the ALJ did not provide clear and convincing reasons for rejecting Petitioner's testimony concerning his degree of pain and its functional limitations. Third, Petitioner contends that the ALJ improperly rejected the lay witness testimony of Mr. Fuller. Fourth, Petitioner contends that the ALJ erred by mechanically applying the medical-vocational guidelines, as Petitioner is nearing fifty years of age and vocational rule 201.14 would provide for a finding of disabled if applied. Finally, Petitioner asserts that the ALJ improperly rejected the Vocational Expert's testimony, which in turn relied upon the ALJ's assessment of Petitioner's credibility at step four. Petitioner contends that if the ALJ had properly assessed Petitioner's subjective complaints, the RFC assessment would have resulted in a finding of disability because Petitioner's pain would preclude the ability to do all work.

**A.     ALJ's Evaluation of Petitioner's Headaches and Hepatitis C.**

Petitioner contends it was error for the ALJ to find that his headaches and Hepatitis C were not severe.  The Court finds, however, that the medical records submitted to the ALJ support the ALJ's conclusion that Petitioner's Hepatitis C symptoms are "not severe."  For an impairment to meet the "severity" requirement, it must "significantly limit" one's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Basic work activities include physical functions such as walking, standing, sitting, and lifting; capacities for seeing, hearing and speaking; understanding, remembering, and carrying out simple instructions; using judgment; responding appropriately in a work situation; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).  Disability is defined, therefore, in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  Medical and other evidence must be furnished to establish the existence of the disability.  *Bowen*, 482 U.S. at 146.

Petitioner's medical records never indicated that he suffered from or complained of headaches.  Although Petitioner sought continuous treatment for his low back pain, there is nothing in the medical records to indicate Petitioner sought treatment for debilitating or chronic headache pain.  The ALJ "did not doubt that [Petitioner] gets headaches from time to time" but, because of the lack of any treatment regimen in the medical records for the condition, found the condition to be not severe.

As for Petitioner's Hepatitis C, which was documented in the medical records, the ALJ noted that Petitioner's symptoms were not described by his treating physicians as severe.  As a drug user, the ALJ noted that Hepatitis C is "known to follow parenteral drug abuse" and, as

such, is generally mild and asymptomatic.  (AR 14.)  Also, the ALJ noted that Petitioner had not

undergone interferon therapy for his hepatitis, although at the hearing the Petitioner testified that

he was scheduled to begin such a regimen once he was "mentally able."  (AR 14, 680.)

There is no support in the record for the Petitioner's argument that the ALJ failed to take

into account Petitioner's headaches or Hepatitis C.  Rather, the ALJ's conclusion to not

specifically discuss these disorders in his decision is supported by substantial evidence in the

record.  Because the record contains few and inconclusive, if any, references to these disorders,

the ALJ's decision is supported by substantial evidence and was not the product of legal error.

**B.      ALJ's Evaluation of Petitioner's Credibility as it Relates to His Subjective
         Complaints of Pain.**

**1.      Petitioner's Credibility.**

Petitioner argues that there was an insufficient explanation given for rejecting his

complaints and testimony about the pain he experiences on a daily basis.  The ALJ is responsible

for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ's findings must be supported by

specific, cogent reasons.  *Reddick*, 157 F.3d at 722.  If a claimant produces objective medical

evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints

of pain based solely on lack of medical evidence.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir.

2005).  *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an

ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective

medical evidence that supports the testimony).  Unless there is affirmative evidence showing that

the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting

pain testimony.  *Burch*, 400 F.3d at 680.  General findings are insufficient; the ALJ must identify

what testimony is not credible and what evidence undermines the claimant's complaints.
*Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of a claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

The ALJ relied upon objective medical tests to conclude that Petitioner did suffer from a medically determinable physical impairment that caused his pain. A June 13, 2004 x-ray noted moderate degenerative changes in the C-spine from levels C3-C4 through and including C5-C6, characterized by disc space narrowing, spurring, and some loss of vertebral body height at C5

and C6.  (AR 209.)  As for his lower back pain, an April 13, 2005 CT of Petitioner's lumbar

spine demonstrated moderate to severe foraminal narrowing on the left and moderate neural

foraminal narrowing on the right at L5-S1, mild to moderate central disc protrusion that *may*

contact the left S1 nerve root, mild bilateral neural foraminal narrowing at L4-5 secondary to

moderate facet spondylosis, and a moderate broad-base disc bulge that *may* contact the exiting

L4 nerve roots bilaterally.  (AR 439.)  The ALJ found these medical conditions could reasonably

be expected to produce Petitioner's pain.

Next, the ALJ evaluated Petitioner's credibility concerning the intensity, persistence, and

limiting effects of his pain.  The ALJ concluded that the Petitioner's statements concerning his

impairments and their impact on his ability to work were not credible in light of the degree of

medical treatment required, discrepancies between the Petitioner's assertions and information

contained in the documentary reports, and the reports of Petitioner's treating and examining

physicians.  (AR 17.)  The ALJ's conclusion is supported by substantial evidence in the record,

as discussed in the ALJ's decision and below.

Petitioner testified that he is in constant pain, with pain radiating into his buttocks and

getting worse.  He sought treatment for his low back pain at the VA Medical Center in Spokane

since 2004.  Petitioner testified that he can dress himself, cook, and do laundry so long as no

prolonged standing is required; he tends to his rose bushes in the garden; watches television;

reads; and otherwise takes it easy around the house.  (AR 16, 672-75.)  He testified that he could

lift ten to fifteen pounds, sit ten to fifteen minutes, stand ten to fifteen minutes, and walk about

thirty steps.  (AR 16, 674.)   Petitioner also claimed he had to lay down five to seven hours a day

to relieve his pain and discomfort, and does not sleep well because of pain.  (AR 17, 678-79.)

When rejecting Petitioner's statements concerning the intensity, persistence, and limiting effects of his pain, the ALJ noted inconsistent statements between Petitioner's testimony and what he previously had told physicians.  For example, the ALJ noted that during a follow up visit on July 8, 2005, Petitioner stated he was doing well managing pain with medications (Percocet, Methadone and Oxycodone) and that his sleep disturbances were also responding well to medications.  (AR 19, 556.)  During that visit, Petitioner was reported to tell his physician that he can "do more activity since being on the pain medications."  (AR 556.)  Also, it was noted that the MRI results from that visit noted no evidence of significant spinal stenosis.  (AR 19, 556.)

In addition, although not specifically discussed by the ALJ, the notes taken during Petitioner's in-patient drug treatment program at the VA contradict Petitioner's testimony at the hearing.  Petitioner attended drug addiction treatment during February and March 2005.  He was admitted to in-patient treatment February 17, 2005.  (AR 281.)  During intake, he stated he was "self-employed."  (AR 281.)  On February 21, 2005, Petitioner reported that he did not sleep well because of back pain, but nursing notes indicated that Petitioner "appeared to be sleeping soundly during the night . . . [and] was not seen awake during the night."  (AR 356.)  Additional nursing notes during his in-patient stay were consistent, as none of the staff noted any sleep disturbances.  (AR 353, 363, 367, 372, 377.)

Another nursing note indicates that on February 20, 2005, after complaining of pain in his left arm, Petitioner was observed using the arm without difficulty during the shift without any outward signs of pain, that he was relaxed, and he asked for ice-cream.  (AR 357.)  On February 16, 2005, Petitioner participated in a craft group, and again on February 19, 2005, Petitioner

participated "fully" in the afternoon craft group, making a dream catcher.  (AR 383, 365.)  Also

during this time period, Petitioner was able to attend group therapy sessions on a daily basis for

four hours at a time.  (*See* AR 324-325, 332,  334.)

Upon discharge on March 18, 2005, from the drug treatment program, Petitioner planned

to attend AA twice a week, attend group at the VA once a week, attend church, and resume his

welding and mechanical work.  (AR 310.)  Dr. Gardner, who examined Petitioner on January 10,

2006, noted that Petitioner attends church twice a week and goes to bible study.  (AR 223-24.)

In Dr. Gardner's opinion, Petitioner presented a "strong disability conviction," but he did not

give an opinion that Petitioner was disabled.  (AR 226.)  These treatment notes and observations

constitute additional substantial evidence to support the ALJ's conclusion that there were

discrepancies between the Petitioner's assertions and information contained in the documentary

reports.

The ALJ also noted that the diagnosis of Petitioner's condition did not change over time.

On December 15, 2006, Petitioner was seen by a surgeon, who determined surgical intervention

was not indicated to alleviate pain.  (AR 594.)  On May 11, 2006, as the ALJ noted, Petitioner

had an additional MRI to compare with earlier films, and only "minimal" progression was noted.

(AR 20-21, 623-24.)[1]  The ALJ specified that the May 11, 2006 treatment note indicated that

Petitioner's gait was "non-antalgic," and no pain was noted upon Valsalva maneuver.  (AR 21.)

The ALJ then relied upon the assessment of the state agency physician, who concluded that

Petitioner could lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand,

---

[1]  The ALJ also considered Petitioner's mental impairments as discussed by his examining
physician, Dr. Gardner.  (AR 19-20; 221-27.)  However, Petitioner does not challenge the ALJ's findings
concerning credibility with respect to his mental impairments, and only challenges the ALJ's conclusions
about the effects of his pain.  (Pet.'s Brief at 6-9.)

**REPORT AND RECOMMENDATION - Page 11**

and walk for about six hours in an eight hour day with normal breaks; and that no other

limitations were noted.  (AR 20, 247-254.)

 As stated above, it is the ALJ's job to determine credibility.  *See Meanel v. Apfel*, 172

F.3d 1111, 1113 (9th Cir. 1999).  If there is substantial evidence in the record to support the

ALJ's credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*,

278 F.3d 957, 959 (9th Cir. 2002).   If the evidence can support either outcome, the court may

not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

1999).  The issue is not whether the Court agrees with the ALJ's credibility assessment, but

whether the assessment is sound.   There is substantial evidence in the record to support the

ALJ's finding that Petitioner was not fully credible, as the ALJ took into consideration the

objective medical evidence, inconsistencies between the pain Petitioner complained of and his

daily activities, inconsistent statements regarding his symptoms and limitations, and that

extensive surgical treatment was not recommended.

 The Court finds, based on the above, there is substantial evidence in the record to support

the ALJ's finding that Petitioner was not fully credible.  The Court will not engage in second-

guessing when the ALJ's decision is sound and there is substantial evidence to support it.

 **2.      Consideration of Conservative Course of Treatment.**

 In his reply brief, Petitioner argued that his non-surgical condition and conservative

treatment regimen was not a proper basis upon which to discount Petitioner's testimony.  (Reply

Brief at 1-2, Docket No. 14.)  He cited *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1164 (9th Cir. 2008), which held that "although a conservative course of treatment can

undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the

claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." 533 F.3d at 1162. In that case, the claimant did not pursue more aggressive treatment because he did not tolerate the side effects, and his insurance did not cover the medication required to treat his pain. On that record, the court of appeals considered the minimal treatment regime to not be a proper basis for finding the claimant non-credible. *Id.*

*Carmickle* is distinguishable here. In this case, the ALJ outlined Petitioner's treatment regime, which consisted of conservative treatment using drug therapy, primarily Percocet, Methadone and Oxycodone. Unlike in *Carmickle,* Petitioner is not pursuing aggressive surgical intervention because it is not indicated. (AR 594). On this record, the minimal treatment regime would be a proper basis for finding Petitioner not credible, and therefore the ALJ did not err in so concluding.

### 3.     Lay Witness Testimony.

Petitioner contends it was error for the ALJ to reject the statements of Mr. Fuller when discrediting Petitioner's testimony. Mr. Fuller, Petitioner's friend, testified that he had known Petitioner for twenty-five years, and visits him twice a week. He testified that during their visits, Petitioner is "always laying on the couch," and that he's only seen Petitioner walk from his couch to the door. (AR 683.) Mr. Fuller had driven Petitioner to the hearing, and testified that they stopped twice, once because Petitioner's back was hurting, and a second time because Petitioner had to vomit. (AR 683.) In his decision, the ALJ summarized Mr. Fuller's testimony, although he omitted that Petitioner had vomited on the way to the hearing. (AR 17.)

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. §

404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).  The ALJ is required to consider competent lay testimony, but in rejecting such evidence, he must only give reasons for doing so that are "germane to [the] witness."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities.  *Lewis v. Apfel*, 236 F.3d 503, 511-512 (9th Cir. 2001).

In this case, the ALJ concluded that the objective medical evidence recited in his decision did not establish physiological or psychological abnormalities that would preclude all work activity.  (AR 22.)  Moreover, the ALJ's recitation of the pertinent medical records, and the records as a whole, did not indicate Petitioner complained to his treating physicians of vomiting as a side effect of his medications.  Thus, the ALJ chose to cite conflicting medical evidence as opposed to giving credit to Mr. Fuller's testimony, who only visited Petitioner twice a week to talk.  The Court therefore finds that the ALJ did not commit error in rejecting the statements of Mr. Fuller.

## C.     Residual Functional Capacity to Do Past Relevant Work and Hypothetical Posed to Vocational Expert.

Petitioner asserts that the ALJ's finding that he can perform light work is in error.  The Petitioner contends that the hypothetical posed to the vocational expert did not include all of Petitioner's limitations, specifically the severity and limiting effects of his pain.  If Petitioner's testimony given at the hearing was credible and supported by substantial evidence, the vocational expert was of the opinion that all work would be precluded because of his constant pain and spasms that cause him problems.  (AR 686-87.)

At the fourth step in the sequential process, the ALJ determines whether the impairment

prevents the claimant from performing work which the claimant performed in the past, *i.e.*, whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A claimant's residual functional capacity is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a).  An ALJ considers all relevant evidence in the record when making this determination.  *Id.* Generally, an ALJ may rely on vocational expert testimony.  20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations.  *Bayliss*, 427 F.3d at 1217.

The ALJ's residual functional capacity finding and the hypothetical he proposed to the vocational expert are supported by substantial evidence in the record.  The AJL need not consider or include alleged impairments that have no support in the record.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2000).  In his hypothetical, the ALJ included limitations imposed by Petitioner's low back pain, which precluded climbing ladders or scaffolds; limited him to occasional stooping, crouching crawling, kneeling, and balancing; and required changing position every 45 minutes to an hour to relieve pain symptoms.  (AR 15.)  The ALJ also considered the effects of Petitioner's pain medications, which he noted still allowed Petitioner to remain attentive, responsive, and reasonably alert to perform required job functions.  (AR 15.) Finally, the ALJ included Petitioner's mental impairments, which required only limited contact with others.  (AR 15.)  Based upon that hypothetical, the vocational expert opined that an individual with the same age and educational experience as Petitioner would be able to perform a broad range of sedentary and light unskilled work.  (AR 684-85.)

As for Petitioner's contentions that the ALJ did not address or consider the severity of his pain symptoms, the additional limitations Petitioner described are not supported by substantial evidence in the record and, accordingly, the ALJ did not need to include them in his hypothetical or RFC determination.  Without substantial evidence in the record to support the additional limitations Petitioner described, the ALJ did not err in excluding them from his hypothetical.  Additionally, the fact that the only evidence of these limitations were statements from the Petitioner, whom the ALJ determined to not be fully credible, is further support for the ALJ not affording the statements much weight in his determination.

The ALJ considered the record as a whole, incorporating his determination that Petitioner was not fully credible, and included the limitations supported by substantial evidence in the record in his hypothetical to the vocational expert.  The law provides that the ALJ does not need to include unsupported limitations, which is precisely what occurred in this case.

**D.     Application of the Medical-Vocational Guidelines at Step Five.**

Petitioner argues that age categories in this case should not have been mechanically applied considering that Petitioner has now attained fifty years of age, and was just five months shy of his fiftieth birthday at the time the ALJ issued his decision on January 18, 2008.  (Brief at 11, Docket No. 12-2.)  In his decision, the ALJ classified petitioner as 44 years of age, defined as a younger individual age 18-49, based on the alleged disability onset date of February 2, 2003. (AR 22.)

20 C.F.R. § 404.1563(b) specifies that the age category that applies to the claimant during the period for which he or she is claiming disability will be applied, but that the age categories will not be applied mechanically in a borderline situation.  For persons younger than

fifty, age is not considered to be a factor that will seriously affect a claimant's ability to adjust to other work, but in some circumstances, persons aged 45-49 may be more limited in their ability to adjust to other work than persons who have not attained age 45.  20 C.F.R. § 404.1563(c). Persons who are fifty are considered approaching advanced age, and may be significantly limited in vocational adaptability if they are restricted to sedentary work.  20 C.F.R. § 404.1563(d); 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.00(c).  Based on vocational rule 201.14, Petitioner argues that at age fifty, a finding of disabled would result based upon his skills and limitations.  (Brief at 11, Docket No. 12-2.)

Pursuant to *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1229 (9th Cir. 2009), the ALJ must consider advancing age when applying the medical-vocational grids.  While it may be proper to base a decision on the claimant's age, if age advances to a different category while the administrative process is pending, the ALJ should consider the evidence as it relates to the new age classification.  *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000) (remanding for evaluation of further evidence relating to the existence of substantial gainful work after claimant had attained age fifty).  *See also Brouwers v. Bowen*, 823 F.2d 273, 275 (8th cir. 1987) (noting that it was proper to consider advanced age during the proceedings upon remand, which ultimately led to a finding of disability).

However, in meeting the burden under step five, the Commissioner may *either* rely upon the testimony of a vocational expert, *or* refer to the grids.  *Burton v. Massanari*, 268 F.3d 824, 828 n.1 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  During the hearing and in his written decision, the ALJ relied upon the testimony of a vocational expert and did not apply the grids.  Moreover, the ALJ's hypothetical asked the vocational expert to assume

**REPORT AND RECOMMENDATION - Page 17**

the individual was forty-nine years of age, the age of Petitioner on the day of the hearing and at

the time of the written decision.  (AR 684.)  Based upon the hypothetical, the vocational expert

was of the opinion that someone like Petitioner was not disabled and could perform sedentary

and light unskilled work.  (AR 685.)

Accordingly, the ALJ did not err at step five, and properly relied upon the testimony of a

vocational expert.

## V.
## Conclusion

Based on review of the entire record, the Court finds that the Commissioner's decision is

supported by substantial evidence and is not the product of legal error.  Therefore, the

Commissioner's decision finding that the Petitioner is not disabled within the meaning of the

Social Security Act should be affirmed.

## <u>RECOMMENDATION</u>

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby RECOMMENDED that**:

1)      Plaintiff's Petition for Review (Docket No. 1) be **DENIED**.

2)      The Commissioner's action be **AFFIRMED** and judgment be entered in favor of the **RESPONDENT**.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.



DATED: August 3, 2009

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge

**REPORT AND RECOMMENDATION - Page 19**